## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DELORES WALDO, individually and as the Personal Representative of the Estate of James Anthony**, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  19-cv-136 (TSC) |
| **DISTRICT OF COLUMBIA, et al.,** | ) ) ) | |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Delores Waldo brings five claims—a survival action, wrongful death, negligence, and two 42 U.S.C. § 1983 claims—against the District of Columbia on behalf of her deceased brother, James Anthony, who committed suicide while detained by the D.C. Metropolitan Police Department ("MPD").  Defendants have moved to dismiss the complaint in its entirety. Plaintiff's opposition to the motion included a proposed amended complaint, which this court ordered stricken from the record, as Plaintiff had not sought leave of the court to amend her complaint.  Thereafter, Plaintiff properly filed a motion for leave to amend, adding new information and a John Doe MPD officer as a new defendant.  She also filed an opposition to the motion to dismiss, putting two motions before the court: Plaintiff's motion to dismiss and her motion for leave to amend the complaint.  ECF Nos. 3, 9.  For the reasons set forth below, Plaintiff's motion for leave to amend her complaint is GRANTED IN PART and DENIED IN PART, and Defendants' motion to dismiss is DENIED.

## I.     BACKGROUND

On January 21, 2017, MPD officers detained Plaintiff's brother, James Anthony.  ECF No. 9-2, Proposed Am. Compl. at ¶ 7.  Anthony suffered from mental illness, which was "noticeably" on display at the time of his arrest.  *Id*. at ¶¶ 10–11.  After he was transported to MPD's Second District Station and placed in a holding cell alone, Anthony continued to "clearly and persistently" show signs of mental distress, including suicidal ideation.  *Id.* at ¶¶ 12–13.  Shortly thereafter, Anthony fashioned a noose from a bedsheet in his holding cell and hung himself.  *Id.* at ¶ 14.

Plaintiff alleges that cells in the Second District Station are equipped with cameras, and "a Second District staff member" was responsible for monitoring detainees in their cells.  *Id.* at ¶¶ 7–8.  On January 21, 2017, this responsibility fell to an unnamed Officer John Doe.  *Id.* at ¶ 16.  Plaintiff alleges that at the time of Anthony's death, Officer John Doe was away from his post and Anthony, unmonitored, was able to commit suicide without intervention.  *Id.* at ¶ 17.

Plaintiff also alleges that MPD personnel lacked sufficient training on mental health issues and suicide prevention, and that because of this lack of training, MPD personnel do not notice warning signs of suicidal ideation or obtain information from inmates that would help them identify suicidal ideation.  *Id.* at ¶¶ 19–20.  She further alleges that MPD does not have sufficient suicide resistant cells in which to house inmates presenting suicidal ideations.  *Id.* at ¶ 21.  Plaintiff contends that this lack of training and deliberate indifference to mental health and suicide prevention is responsible for Anthony's death.  *Id.*  at ¶¶ 21–23.

Two of Plaintiff's claims—denial of medical care and denial of protection from harm (Counts III and IV)—are brought pursuant to 42 U.S.C. § 1983, alleging that Defendants' failure to prevent

Anthony's death violated his Fifth Amendment rights. *Id.* at ¶¶ 35–44. Three—a survivor action, wrongful death, and negligence (Counts I, II, and V)—are brought under D.C. common law. *Id.* at ¶¶ 24–34, 45–48.

## II.    LEGAL STANDARD

Courts should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice "so requires" that leave to amend be granted absent any one of several factors—unreasonable delay, bad faith, dilatory motive, failure to cure, prejudice, or futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint make allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "well-pleaded factual allegations" allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and "must assume the truth of all well-pleaded allegations." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). When a defendant argues that the claims in an amended complaint would be futile, as Defendants do here, the court employs the same Rule 12(b)(6) analysis that governs a motion to dismiss. *In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215–16 (D.C. Cir. 2010).

## III.    ANALYSIS

Defendants argue that Plaintiff has failed to plead actionable constitutional claims against the District in Counts III and IV of the proposed amended complaint, rendering the proposed

amendment futile. Specifically, Defendants argue that the additional allegations are "insufficient to support" Plaintiff's 42 U.S.C. § 1983 claims.

A plaintiff may only bring a 42 U.S.C. § 1983 claim against a municipality if they can show that a government policy or custom was the "moving force" behind an alleged constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Policies or customs may be specific, *see id.* (city ordinance); *Owen v. City of Independence*, 445 U.S. 622, 629 (1980) (act of city council); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (high-level municipal policymaker decision), but also exist when a municipality fails to train employees in a manner that makes it highly foreseeable that constitutional violations will result. *See Canton v. Harris*, 489 U.S. 378, 390 (1992).

A municipality may be liable for failure to train an employee when the likelihood of constitutional violation is so high and so obvious that policymakers "can reasonably be said to have been deliberately indifferent to the need." *Id.* A showing "that a municipal actor disregarded a known or obvious consequence of his action" demonstrates such deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). Put simply, when a failure to train makes an employee's constitutional violations a plainly "obvious consequence" of their actions, municipalities have shown a deliberate indifference that makes them liable under *Monell*. *Id.*

There is no different, higher pleading standard for alleging a failure to train claim. While the D.C. Circuit recognizes that proving a failure to train claim is "no easy task," the difficulty lies in identifying a "close link between the alleged injury and the alleged deficiency in training." *Atchinson v. D.C.*, 73 F.3d 418, 421 (D.C. Cir. 1996) (citing *Canton*, 489 U.S. at 391); *see also*

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 163–69 (1993) (rejecting a heightened pleading standard for *Monell* claims)).  As a practical matter, this means that a plaintiff need only clearly identify the type and "contours" of the municipal policy in question.  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015), *cert. denied* 135 S. Ct. 77 (2016); *Cf. Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam) (noting that plaintiffs stating "simply, concisely, and directly events that . . . entitled them to damages from the city" was enough to "stave off" dismissal).

The D.C. Circuit describes a *Monell* analysis as a two-step inquiry.  First, courts must examine if a plaintiff has alleged a "predicate constitutional violation."  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  Second, courts should determine whether there is an appropriate basis for municipal liability, as described above.  *Id.*  Here, the parties do not dispute the first step of this inquiry; they dispute only whether municipal liability exists.

Plaintiff alleges that Defendant's failure to train MPD personnel in avoiding inmate suicides constituted deliberate indifference, resulting in Anthony's death.  Specifically, Plaintiff claims that MPD personnel failed to: (1) "timely and fully assess decedent's health by way of psychiatric evaluation and/or related measures," and (2) protect Anthony from "clearly identified and known risks of suicide" via care, treatment, and preventative measures.  Proposed Am. Compl. at ¶¶ 35–44.  In support of these claims, Plaintiff submitted a "Report on Suicide Prevention Practices within the District of Columbia, Department of Corrections' Central Detention Facility" (hereinafter, "Report"), that contains many observations and recommendations for preventing inmate suicides at the D.C. Department of Correction's (DOC) Central Detention Facility.  ECF No. 9-3.  Plaintiff also alleges that Officer John Doe's "fail[ure]

to be at his post" constituted deliberate indifference.  Proposed Am. Compl. at ¶¶ 16–17.  In response, Defendants argue that the Report is irrelevant to Plaintiff's claims, that Officer John Doe's actions cannot support liability, and that a single incident of conduct is insufficient proof of a policy or custom of deliberate indifference.

Defendants are only partially correct.  As evinced by its title, the Report focuses on increased incidences of suicide at the D.C. DOC Central Detention Facility and was commissioned by DOC's Director specifically for implementation at the Central Detention Facility.  Report at *2. The Report does not address—nor does it apply to—MPD or persons detained in MPD custody. It does not appear that MPD officials contributed to the Report's recommendations or conclusions.  *See id. at* *51.  Plaintiff is correct that the Report "identified shortcomings" in preventing suicides in inmates housed in DOC facilities.  Plaintiff's Memo. in Supp. of Reply to Defendants' Opp. to Motion for Leave to Amend, ECF No. 12-1 at *2.  But Defendants are correct in their response that the Report applied only to DOC and would not have put MPD personnel on notice that their actions might have resulted in a constitutional violation.

Defendants are also correct that Officer John Doe's action in leaving his post cannot impose municipal liability under *Monell*.  Plaintiff's proposed amended complaint states that Officer John Doe left his post while Anthony, who had been showing signs of distress and suicidal ideation, tied a noose around his bed post and committed suicide while unmonitored.  Proposed Am. Compl. ¶¶ 11–17.  But the proposed amended complaint also alleges that Officer John Doe's actions violated MPD's policies.  Proposed Am. Compl. ¶¶ 15–16.  *Monell* is clear that the "moving force" for liability must be a municipality's policies or customs, not a failure to abide by them.  436 U.S. 658, 694 (2018).  Thus, Officer John Doe's failure to follow MPD policy

does not support Plaintiff's claim of deliberate indifference, as it is the officer's actions, not MPD's alleged policy, that would be the moving force behind Anthony's death.

Defendants err, however, in arguing that a single incident cannot create municipal liability. Liability can be drawn from a single incident if there is at least an "affirmative link" between an allegedly unconstitutional policy and that incident. *See City of Oka. City v. Tuttle*, 471 U.S. 808, 823 (1985); *Cf. Pembaur*, 475 U.S. at 479 ("municipal liability may be imposed for a single decision by municipal policymakers. . . ."). A municipality may still be liable for an unconstitutional policy, even if there is only one incident demonstrating that policy's deliberate indifference to a known or obvious potential constitutional violation.

Defendants' citation to this court's decision in *Odom v. District of Columbia* 248 F. Supp. 3d 260 (D.D.C. 2017), is therefore distinguishable. In that case, a mother and son claimed that MPD officers violated their constitutional rights pursuant to 42 U.S.C. § 1983 when an officer placed her son in a chokehold. *Id.* at 263. This court found that a single incident of harm—the chokehold—was "not specific enough to state a *Monell* claim" when there were no facts or pleadings showing "an absence of training in the face of an obvious need." *Id.* at 267. Indeed, that decision noted that "a municipality's failure to provide any training on an issue that would obviously necessitate training—such as . . . *when detainees need medical treatment*—can in some circumstances demonstrate municipal deliberate indifference." *Id.* at 268 (emphasis added).

Plaintiff alleges that the "training provided to MPD personnel is inadequate . . . [lacking] any specialized mental health and/or suicide prevention training which will allow them to better identify inmates and/or detainees that may present suicidal ideations." Proposed Am. Compl. at

Page **7** of **10**

¶ 19.  This lack of training, Plaintiff claims, is what caused MPD personnel to miss Anthony's "clearly and persistently exhibited signs of distress" and "signs of suicidal ideation," and place him in a cell where he was able to take his own life.  *Id.* at ¶¶ 11–12, 21.  While Anthony's death may indeed have been a single tragic incident, Plaintiff has sufficiently pled facts to support her theory that a failure to train MPD personnel on mental health and suicide prevention was the moving force behind Anthony's death.

Plaintiff's proposed amended complaint is not futile in its entirety.  While her claims relying on the Report and Officer John Doe's December 21, 2017 actions are insufficiently pled, her claims alleging the inadequacy of Defendants' mental health and suicide prevention are sufficiently pled.  Leave to amend is therefore granted as to the parts of the proposed amended complaint that support Plaintiff's mental health and suicide prevention policy claims.

As a result, defendants' motion to dismiss must be denied.  Pending motions "pertaining to the original complaint where the plaintiff has filed a superseding amended complaint" are denied as moot.  *See P&V Enter. v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 2d 134, 135 n.1 (D.D.C. 2006) quoting (*Bancoult v. McNamara*, 214 F.R.D. 5, 13 (D.D.C. 2003) (quotations omitted)). Defendants' motion to dismiss was filed in response to Plaintiff's original complaint and thus must be dismissed as moot.  *See* Defendants' Motion to Dismiss, ECF No. 2.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Amend her Complaint, ECF No. 9, is hereby GRANTED IN PART and DENIED IN PART and Defendants' Motion to Dismiss, ECF No. 3, is hereby DENIED.

Date:  September 30, 2021

*Tanya S. Chutkan*
TANYA S.  CHUTKAN
United States District Judge